## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUAN JOSÉ PERAZA MORA | CASE NO. 19-01896-ESL12 |
| GLORIA E. BATISTA MOLINA | |
| d/b/a Vaquería Peraza | |
| XXX - XX - 9523 | CHAPTER 12 |
| XXX - XX - 1026 | |
| Debtors | |

**Amended Chapter 12 Plan Dated May 14, 2020**

The above captioned Debtors, **Juan José Peraza Mora** and **Gloria E. Batista Molina** by and through the undersigned counsel, hereby submit the following proposed Amended Chapter 12 Plan (the "Plan") pursuant to the provisions of 11 U.S.C. Section 1201, et seq., and specifically to 11 U.S.C. Section 1222.

Pursuant to the provisions of Sections 1222 of the Code, Debtors propose the classification and treatment of claims as hereinafter stated.

Creditors and other parties in interest are urged to read and consider this Plan in its entirety since this represents a proposed legally binding agreement between the Debtors, creditors and parties in interest.

## ARTICLE I

## DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings set forth.

1. "Administrative Creditor" shall mean a person entitled to payment of an Administrative Expense Claim.

2. "Administrative Expense Claim" shall mean any Claim constituting a cost or expense of administration of the Chapter 12 proceedings allowed under 11 U.S.C. Sec. 503(b) and 507(a)(1).

3. "Allowed Claim" shall mean any Claim as allowed pursuant to 11 U.S.C §502. Unless otherwise provided for in this Plan, "Allowed Claim" shall not include interest, cost, fees, expenses or other charges on the principal amount of such Claim from after the Petition Date.

4. "Allowed secured Claim" shall mean any Allowed Claim, which is a Secured Claim and shall include in the amount thereof – unless otherwise stated in this Plan – all interest accrued on or after the Petition Date, fees, costs, and charges as may be allowed.

5. "Bankruptcy Code" or "Code" shall mean the provision of Title 11 of the United States Code, 11 U.S.C. Sections 1201 et seq., as amended from time to time.

6. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Puerto Rico, having jurisdiction over this Chapter 12 proceeding.

7. "Bankruptcy Rules" or "Rules" shall mean the Federal Rules of Bankruptcy Procedures, as amended from time to time.

8. "Bar Date" shall mean the deadline of June 14, 2019 for creditors to filed their proof of claims and  October 2, 2019 for government proof of claims date after which any proof of claim filed will not have any effect on this Plan and will not entitle its holder to participate with other Claims under this Plan.

9. "Claim" shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of

performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

10. "Class" shall mean a category of holders of Claims or Interest that is substantially similar to other claims or interest in such Class.

11. "Confirmation Date" shall mean the date the Order of Confirmation in this Chapter 12 proceeding and becomes a Final Order.

12. "Consummation Date" shall mean the date by which all of the conditions precedent to full consummation set forth in this Plan, shall have be met or waived.

13. "Creditor" shall mean any Person (as herein after defined) who has a Claim against the Debtor, which arose on or before the Petition Date or a Claim of any kind specified in 11 U.S.C. Sections 502(g), 503(h) or 502(I).

14. "Debtor" or "Debtors" shall mean the individual/s, **Juan José Peraza Mora** and **Gloria E. Batista Molina**

15. "Effective Date of the Plan" shall mean thirty (30) days after the order of confirmation of the plan, becomes a final order and shall b e the date on which there shall be made all cash payments required by the Plan.

16. "Estate" shall mean the property owned by the Debtors that comprises the Chapter 12 estate of the Debtor in the above-captioned Chapter 12 proceeding.

17. "Final Order" shall mean an Order of the Bankruptcy Court (or other court of appropriate jurisdiction) which shall not have been reversed, stayed, modified or amended and the time to appeal from or to seek review or rehearing of such order shall have expired, and about which, no appeal or petition for review or rehearing or certiorari proceedings is pending,

as a result of which such Order shall have become final according to Rule 8002 of the Rules of Bankruptcy Procedure, as such Rules may be amended from time to time.

18. "Lien" shall mean a mortgage, pledge, judgment lien, security interest, charging order, or other charge or encumbrance on Property as is effective under applicable law as of the Petition Date.

19. "Liquidation" shall mean the complete liquidation of the Property of Debtors' Estate, by a duly appointed trustee, according to the provisions of Chapter 7 of the Bankruptcy Code.

20. "Liquidation Analysis" shall mean the comparison of the current assets and liabilities of the Debtors, in order to determine the Liquidation Value of the Debtor's Property.

21.  "Liquidation Value" shall mean the value that, any item of the Debtor's Property could be expected to bring during Liquidation.

22. "Order of Confirmation" shall mean the Order of the Bankruptcy Court confirming this Plan, pursuant to 11 U.S.C. § 1225.

23. "Person" shall mean any individual, corporation, partnership, association, Joint Stock Company, trust, unincorporated organization, government or any political subdivision thereof, or other entity.

24.  "Petition Date" shall mean November 20, 2018 the date on which the Debtors filed this Voluntary Petition and they commenced the instant Chapter 12 proceedings.

25.  "Priority Claim" shall mean any Allowed Claim, other than an Administrative Expense Claim or Priority Tax Claim, to the extent entitled to priority in payment under 11 U.S.C. Section 507(a).

26. "Priority Creditor" shall mean any Creditor that is the holder of a Priority Claim.

27.  "Priority Tax Claim" shall mean any Allowed Claim of any Person who is entitled to a priority in payment under 11 U.S.C. Section 507 (a) (8).

28. "Priority Wage Claim" shall mean Allowed Claim of any Person who is entitled to a priority in payment under 11 U.S.C. Section 507 (a) (3).

29. "Property" shall mean the property of the Estate, which shall be administered by the Debtor or the Chapter 12 Trustee.

30. "Pro Rata" shall mean in the same proportion that a Claim or Interest in a given Class bears to the aggregate amount of all Claims (including disputed Claim until allowed or disallowed) or the aggregate number of all Interest in such Class.

31.  "Secured Claim" shall mean a Claim, the holder of which is vested with a perfected, non voidable Lien on Property in which the Debtors have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or other applicable non bankruptcy law, and is duly established in this case, to the extent of the value of such holder's interest in the Debtor's interest in such Property, as determined according to 11 U.S.C. Section 506.

32. "Secured Creditor" shall mean a Creditor who has a Secured Claim.

33. "Trustee" shall mean the standing Chapter 12 Trustee, Jose R. Carrion Morales, Esq.

34. "Unsecured Claim" shall mean a Claim, which is other than an Administrative Expense Claim, a Secured Claim or a Priority Claim (including a Priority Tax Claim or a Priority Wage Claim), including any Claim specified in 11 U.S.C. Sections 502 (g), 502 (h) or 502 (I).

35.  "Unsecured Creditor" shall mean a creditor that is a holder of an Allowed General Unsecured Claim.

36. "Vesting of Property" Upon full consummation of the plan, all of the property of the Chapter 12 Estate shall vest on the Debtors.

37. "Voluntary Petition" shall mean the voluntary Petition for Relief filed by the Debtors on the Petition Date.

## ARTICLE II
## ASSETS AND LIABILITIES AS OF PETITION DATE

### A. ASSETS

| ASSET | VALUE |
|---|---|
| Real Property Located at SR# 493, Km. 1.0 Int. in Carrizales Ward, Sector Palma Gorda, Hatillo PR<br>Composed of dairy farm of 54 "cuerdas" with business dedicated buildings and a Residence. Recorder at Book #315, Page 115, Lot 4782 of the Registry of Property of Arecibo PR.<br>CRIM Id. Number # 011-000-007-32-998 & 011-007-76-000 | $232,000 |
| Milk Quota of 65,944 liters (encumbered by Triangle Cayman) @ $12.00 per liter | $791,328 |
| Milk Quota of 8,000 liters (encumbered by Jorge O Amador) @ $12.00 per liter | $96,000 |
| Milk Quota of 2,000 liters (Free of any liens) @ $12.00 per liter | $24,000 |
| 2001 Ford F250 (pick-up truck) | $493.50 |
| 2010 Ford Explorer Sport trac XLT (Pick-up truck) | $3,698.00 |
| Household Furniture and appliances | $3,500.00 |
| Household Electronics | $500.00 |
| Jewelry | $3,400.00 |
| Cash | $400 |
| Clothing | $2,500.00 |
| Bank Acc. #6070 in Oriental Bank | $304.52 |
| Bank Acc. #0788 in Coop Zeno Gandía | $740.85 |
| Bank Acc. #3753 in Firstbank | $84.05 |
| Dairy Cattle<br>186 Milking Cows  @  $1,200 each =  $ 223,200 54 Dry Cows              @ $1,200 each = $ 64,800 42 Pregnant Heifers @ $800.00 each = $ 33,600 35 Heifers (Toreras) @ $500 each = $ 17,500 30 Calves Under 1year old@$300 each =$ 9,000 2 Bulls              @ $1,000 each = $ 2,000<br>TOTAL              $350,100 | $350,100 |

| | |
|---|---|
| Additional Equipment<br>6,400-liter Milk Tank =<br>$6,400 1 Milking Pump =<br>$3,500 | $22,180 |
| 1 Generator = $2,000 Claws = $280<br>1 Bobcat (skid loader) no value since it is scrap<br>metal 1900 Tractor = $3,000<br>2 Feed Mixers (no vale since they're scrap<br>metal) 1990 Tractor Ford Model 6010 =<br>$4,000 Backhoe Digger =$3,000<br>TOTAL $22,180 | |
| Cow feeding (300 onehundred weight/ 3,000 pounds; they are called "quintales in<br>Spanish) = $4,200<br>Cows medicines $210.00 | $4,410 |
| TOTALS | $1,542,785 |

Debtors' main assets are the Bi-Weekly Milk Quota of 75,944 liters as recognized by ORIL

(Oficina Reglamentación de la Industria Lechera) as per ORIL's license numbered 3052., the

Dairy Farm of 54 cuerdas located at SR# 493, Km. 1.0 Int. in Carrizales Ward, Sector Palma

Gorda, Hatillo PR., and the Milking Cattle. The Debtors include a Liquidation Analysis

enclosed as **EXHIBIT 1** and it shows the values and analysis in case of a Chapter 7.

The Milk Quota and its liens in license 3052 from ORIL is explained/shown below:

A QUIEN PUEDA INTERESAR:

Certifico que Juan J. Peraza Mora opera una vaqueria en el municipio de Hatillo, con licencia número **3052** de esta Oficina. El señor Peraza tiene registrada una cuota de **75,944** cuartillos cada 14 días la cual entrega a Vaqueria Tres Monjitas, Inc.

El registro de gravámenes sobre la cuota refleja que **73,944** cuartillos de dicha cuota están pignorados de la siguiente forma:

| | | Primer Rango | Segundo Rango |
|---|---|---|---|
| 1. | Triangle Cayman Asset Company * | 65,944 cllos. | 288 cllos. |
| 2. | Coop. Ahorro y Credito de Hatillo | -0- | 37,270 cllos |
| 3. | Jorge O. Amador Delgado y Diana Cajigas Rios** | 8,000 cllos. | -0- |
| | Total | 73,944 cllos | 37,558 cllos. |

Agro. Jorge A. Campos Merced
**Administrador**
jcampos@agricultura.pr.gov

The table above shows that the following creditors and liens are registered in ORIL over some of the 75,944 liters of Milk Quota that the Debtors own as per ORIL's license 3052

Triangle Cayman Asset Company, LLC. (TCA) has a first rank Lien over 65,944 liters and a second rank lien over 288 liters. The second rank lien is registered over 288 of the same 65,944 liters it already has a first rank lien registered.

Coop Ahorro y Credito de Hatillo (HATICOOP) has a second rank lien over 37,270 liters of Milk Quota which is registered over the liters which TCA has a first rank lien over them.

Jorge O Amador/Diana Cajigas Rios/Conjugal Partnership composed by them, have a first rank lien over 8,000 liters and these have no second rank lien over them.

Debtors own additional 2,000 liters that are free and clear of liens.

## B.  LIABILITIES

The Debtors owe secured creditor, **Triangle Cayman Asset Company LLC,** as the main creditor in the total amount of $3,408,971.11 (See Claim No. 7). The second highest debt is owed to **Federación de Asociaciones Pecuarias de PR Inc**. in the amount of $250,070.82 (See Claim No. 5). The priority creditors are estimated in the amount of $24,014.83. The unsecured creditors will receive the present value of $132,800.00 plus interest at 3.25% per year.

## ARTICLE III
## DESIGNATION OF CLAIMS AND INTEREST

## A.  DESIGNATION OF CLAIMS

The Plan divides the creditors into SIX (6) classes. The classes of creditors are as follow:

1. **CLASS 1 – TRUSTEE EXPENSES**

   Class 1 shall consist of the Chapter 12 Trustee statutory commission computed pursuant to 28 U.S.C. § 586 (e).

2. **CLASS 2 – ADMINISTRATIVE EXPENSES**

   Shall consist of Allowed Administrative Expense Claims, as provided under Section 503 of the Code, including but not limited to fees and expenses of Debtors' counsel and other professionals as may be allowed by the Bankruptcy Court upon application therefore and after notice and hearing according to the Bankruptcy Code and Rules, plus any unpaid taxes or fees accrued since petition date and cost accrued since the petition date.

3. **CLASS 3 – Triangle Cayman Asset Company LLC**

   Triangle Cayman Asset Company, LLC. ("TCA") is owed $3,408,971.11 (See Claim No. 7). This debt corresponds to a commercial loan secured with a first rank lien over Debtors' bi-weekly milk quota in the amount of 65,944 liters and a second rank lien over 288 liters (this second rank lien is over the same 65,944 liters that TCA already had first rank lien) as recognized by the ORIL (Oficina de Reglamentacion de la Industria Lechera) and with Debtors' real properties dedicated to the Dairy Farm operations.

   These Claims by TCA will be treated pursuant to the Stipulation filed by the Debtors and Secured Creditor TCA on April 23, 2020 (at Docket No.148) which includes the "EXHIBIT A" included in the *Motion Submitted Exhibit A to Settlement Agreement* filed on May 5, 2020 (at Docket No. 149).

**The following is also part of TCA's Treatment under the present Plan**:

*On March 6, 2019, the PR District Court for the District of Puerto Rico entered Judgment in case captioned 17-01216-CCC in favor of Triangle and against the Debtors, in the total amount of $3,184,546.95 including principal, interests, late fees and legal expenses among others (the "Judgment").  The Debtors and Triangle reached agreement (the "Settlement Agreement") which provides for a discounted payment of the amounts due under the Judgment.   If complied, the Settlement Agreement would result in the satisfaction of the Judgment. See Settlement Agreement filed at Docket No. 148-1.  The Judgment is hereby ratified and incorporated by reference as if fully set forth herein.*

*Further, notwithstanding other covenants contained in this plan, the Debtors herein consent that the automatic stay shall terminate immediately, as to the Debtors and as to Debtors' estate on the earlier of: (i) the entry of an Order approving the Settlement Agreement; (ii) the confirmation of the instant Chapter 12 Plan of Reorganization; or (iii) the occurrence of an Event of Default, thereby allowing the Judgment to become final and unappealable.*

Regarding previous payments made by the Chapter 12 trustee on April and May 2019 in the total amount of $12,992.00. These disbursements were made as adequate protection payment for the use of TCA's Cash Collateral and said payments do not affect the proposed payments, value or terms, of the Stipulation filed at Docket N. 148 and Exhibit at Docket No. 149.

4. **CLASS 4 – Jorge Orlando Amador Delgado and his wife Diana Cajiga Ríos, and the Conjugal Partnership (Sociedad de Bienes Gananciales) composed by both of them**

These creditors filed two claims, numbered 8, in the amount of $50,000.00 and numbered 9, in the amount of $160,000.00. Claim Numbered 8 is an unsecured claim and will be treated as part of the General Unsecured Creditors Class of this Chapter 12 Plan. Claim Numbered 9 was filed as secured in the amount of $96,000.00 and unsecured in the amount of $64,000.00. Claim Numbered 9 is secured with a first rank lien over 8,000 liters of milk quota. These 8,000 liters of Milk Quota do not have a second rank lien over them. The Milk Quota securing claim 9 is valued at $12.00 per liter and it amounts to $96,000.00. Therefore, the amount of $96,000.00 belonging to Claim Numbered 9 will be paid pursuant to this class and the remaining $64,000.00 will be paid pursuant to the General Unsecured Creditors Class of this Chapter 12 Plan.

5. **CLASS 5 – Cooperativa de Ahorro y Credito de Hatillo ("HATICOOP")**

This creditor filed a Claim Numbered 3 for the total amount of $85,719.67 and the whole amount was claimed as secured. This creditor holds a second rank lien over 37,270 liters. These liters already have a $3.4 million first rank lien over them (belonging to Triangle Cayman Asset Company, LLC). Since the value of the liters that is $12.00 per liter is not sufficient to pay the first rank lien there is no equity left to pay HATICOOP. Therefore, HATICOOP's claim is completely unsecured and the whole amount of $85,719.67 will be paid pursuant to the General Unsecured Creditors Class of this Chapter 12 Plan.

6. **CLASS 6 – General Unsecured Creditors**

        The General Unsecured Creditors Class consists of the following: creditors that have been listed by the Debtors as unsecured creditors, claims that have been filed as unsecured, claims that have been filed as secured but due to the value of collateral are not fully secured, and claims that are partially priority and partially unsecured. The total amounts General Unsecured Creditors that will participate in this class are $2,804,644.26 These creditors will receive a total amount of principal of $132,800.00 plus interest at a 3.25% interest rate The General Unsecured Creditors will be paid the equivalent of the Liquidation Value up to $132,800.00 and they will be paid after the Chapter 12 Trustee has paid all Priority Creditors. The General Unsecured Creditors will receive 4.74% of the principal owed to them.

7. **Payment Of Unsecured Priority Claims**

        The Unsecured Priority Claims debt to this date is $24,014.83 composed of $23,165.68 for the IRS and $849.15 for the Puerto Rico Dept. of Labor. The claims are described as follows:

- IRS (Claim Numbered 4) - Total amount claimed $33,896.47; Amount entitled to Priority Under 11 USC 507 $23,165.68; Unsecured Amount $10,730.79.

- PR Dept. of Labor (Claim Numbered 10) - Total amount claimed $1,511.69; Amount entitled to Priority Under 11 USC 507 $849.15; Unsecured Amount

$662.54

The amounts entitled to priority will be paid accordingly herein, any amount of the claim that was claimed as unsecured debt will be paid pursuant to the General Unsecured Claims Class of this Chapter 12 Plan.

## ARTICLE IV

## TREATMENT FOR CLASSES OF CLAIMS AND INTEREST

### CLASS 1 – Trustee's Expenses

The Chapter 12 trustee shall receive and retain as the trustee's percentage fee under this plan an amount equal to ten percent (10%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount not to exceed $450,000.00, three percent (3%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount higher than the $450,000.01 but in excess of $1,000,000.00 and reasonable compensation not to exceed three percent (3%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount that exceeds the before mentioned amount of $1,000,000.00.

### CLASS 2 – Administrative Expenses

This class will consist of Allowed Administrative Expense Claims, as provided under Section 503 of the Code. This class shall be paid by the Chapter 12 Trustee, in cash and in full as soon as practicable, on the later of (a) the Effective Date or (b) during the first year following the confirmation of the plan. The Chapter 12 trustee will make these payments.

- Former attorney for Debtors, Lissette Morales filed an Application for Compensation on September 9, 2019 in the total amount of $32,802.50 and the amount of $758.07 as

Expenses. The amount of $10,758.00 was paid pre- petition and the amount of $22,730.37 is still owed to the attorney. The Chapter 12 Trustee will pay this amount of $22,730.37 as an administrative expense.

- Attorney Homel Mercado will file an Application for Compensation and the same once approved by the Court will be paid as an administrative expense. Estimated amount $15,000.00

**CLASS 3 – Triangle Cayman Asset Company LLC**

Triangle Cayman Asset Company, LLC. ("TCA") is owed $3,408,971.11 (See Claim No. 7). This debt corresponds to a commercial loan secured with a first rank lien over Debtors' bi-weekly milk quota in the amount of 65,944 liters and a second rank lien over 288 liters (this second rank lien is over the same 65,944 liters that TCA already had first rank lien) as recognized by the ORIL (Oficina de Reglamentacion de la Industria Lechera) and with Debtors' real properties dedicated to the Dairy Farm operations.

These Claims by TCA will be treated pursuant to the Stipulation filed by the Debtors and Secured Creditor TCA on April 23, 2020 (at Docket No.148)  which includes the "EXHIBIT A" included in the *Motion Submitted Exhibit A to Settlement Agreement* filed on May 5, 2020 (at Docket No. 149).

**The following is also part of TCA's Treatment under the present Plan**: *On March 6, 2019, the PR District Court for the District of Puerto Rico entered Judgment in case captioned 17-01216-CCC in favor of Triangle and against the Debtors, in the total amount of $3,184,546.95 including principal, interests, late fees and legal expenses among others (the "Judgment").  The Debtors and Triangle reached agreement (the "Settlement Agreement") which provides for a discounted payment of the amounts due under the Judgment.  If complied, the Settlement*

*Agreement would result in the satisfaction of the Judgment. See Settlement Agreement filed at*

*Docket No. 148-1. The Judgment is hereby ratified and incorporated by reference as if fully set*

*forth herein.*

*Further, notwithstanding other covenants contained in this plan, the Debtors herein*

*consent that the automatic stay shall terminate immediately, as to the Debtors and as to Debtors'*

*estate on the earlier of: (i) the entry of an Order approving the Settlement Agreement; (ii) the*

*confirmation of the instant Chapter 12 Plan of Reorganization; or (iii) the occurrence of an Event*

*of Default, thereby allowing the Judgment to become final and unappealable.*

Regarding previous payments made by the Chapter 12 trustee on April and May 2019 in

the total amount of $12,992.00. These disbursements were made as adequate protection payment

for the use of TCA's Cash Collateral and said payments do not affect the proposed payments, value

or terms, of the Stipulation filed at Docket N. 148 and Exhibit at Docket No. 149.

**CLASS 4 – Jorge Orlando Amador Delgado and his wife Diana Cajiga Ríos, and the
Conjugal Partnership (Sociedad de Bienes Gananciales) composed by both of them**

These creditors filed two claims, numbered 8 in the amount of $50,000.00 and numbered

9, in the amount of $160,000.00. Claim Numbered 8 is an unsecured claim and will be treated as

part of the General Unsecured Creditors Class of this Chapter 12 Plan. Claim Numbered 9 was

filed as secured in the amount of $96,000.00 and unsecured in the amount of $64,000.00. Claim

Numbered 9 is secured with a first rank lien over 8,000 liters of milk quota. These 8,000 liters of

Milk Quota do not have a second rank lien over them. The Milk Quota securing claim 9 is valued

at $12.00 per liter and it amounts to $96,000.00. Therefore, the amount of $96,000.00 belonging

to Claim Numbered 9 will be paid pursuant to this class and the remaining $64,000.00 will be paid pursuant to the General Unsecured Creditors Class of this Chapter 12 Plan.

**Treatment**

**Debt Balance Restructuring Upon Confirmation** – On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and of the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full.

This creditor will be paid in a total term of 100 months. The first 60 months will be paid through the Chapter 12 Trustee. For these 60 months these creditors will receive $900 monthly and an interest rate of 4.75%. Once the Chapter 12 Plan is completed (60 months have elapses) the payment to the creditors of this class will be increased to $1,648.17 and this payment will be made for 40 months. See Amortization Schedule as **EXHIBIT 2.**

**COLLATERALS:** If at any moment, the Debtors obtain funds to pay in a lump sum the amounts provided under this Plan, there will be no penalties for such pre-payment. Regarding the security agreements over personal and real property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan is made. The Debtors acknowledge that if at any moment during the terms of this Plan as mentioned above, any document such as but not limited to: Mortgage Notes or Mortgage Deed, Uniform Commercial Code "UCC" Financing Statement, Lien in the Milk Industry Regulation Office "ORIL", or at any other related document has to be modified, amended, executed and/or supplemented, the Debtors will satisfy the cost of the document

**CLASS 5 – COOPERATIVA DE AHORRO Y CREDITO DE HATILLO("HATICOOP")**

This creditor filed a Claim Numbered 3 for the total amount of $85,719.67 and the whole amount was claimed as secured. This creditor holds a second rank lien over 37,270 liters. These liters already have a $3.4 million first rank lien over them (belonging to Triangle Cayman Asset Company, LLC). Since the value of the liters that is $12.00 per liter is not sufficient to pay the first rank lien there is no equity left to pay HATICOOP. Therefore, HATICOOP's claim is completely unsecured and the whole amount of $85,719.67 will be paid pursuant to the General Unsecured Creditors Class of this Chapter 12 Plan.

Since this creditor has no equity and will be paid in the General Unsecured Creditors class the following applies: If the Debtors sell their business or obtain a loan, then the Debtors will seek and order from the Honorable Court to cancel the second rank lien over the liters of milk quota over which this creditor holds a second rank lien. This creditor will be guaranteed the amount it is entitled pursuant to the General Unsecured Creditor's Class of this Plan.

**CLASS 6 – GENERAL UNSECURED CREDITORS**

The General Unsecured Creditors Class consists of the following: creditors have filed general unsecured claims and claims that have been filed as secured but due to the value of collateral are not fully secured and claims that are partially priority and partially unsecured. The total amounts General Unsecured Creditors that will participate in this class are $2,804,644.26 These creditors will receive a total amount of principal of $132,800.00 plus interest at a 3.25% interest rate The General Unsecured Creditors will be paid the equivalent of the Liquidation Value up to $132,800.00 and they will be paid after the Chapter 12 Trustee has paid all Priority Creditors. The General Unsecured Creditors will 4.74% of the principal owed to them.

The General Unsecured Creditors that will receive distribution are the ones that filed

claims as follows:

| Creditor | Claimed/Listed | Amount |
|---|---|---|
| Pan American Co. | Claim 2 | $15,264.66 |
| HATICOOP | Claim 3 - deficiency/ Class 6 | $85,719.67 |
| IRS | Claim 4 - filed as partially unsecured | $10,730.79 |
| Federacion de Asociaciones Pecuarias de PR Inc | Claim 5 | $257,070.82 |
| PR Department of Treasury | Claim 6 | $12,227.57 |
| TCA | Claim 7 - deficiency/ Class 1 | $2,308,971.11 |
| Jorge Orlando Amador Delgado and his wife Diana Cajiga Ríos, and the Conjugal Partnership (Sociedad de Bienes Gananciales) composed by both of them | Claim 8 - $50,000 Claim 9 - Filed as partially unsecured in $64,000 | $114,000.00 |
| PR Department of Labor | Claim 10 - filed as partially unsecured | $662.54 |
| **TOTAL** | | $2,804,644.26 |

## ARTICLE V

## PAYMENT OF UNSECURED PRIORITY CLAIMS

## UNDER 11 U.S.C. SECTION 507 (a) (8)

All allowed unsecured priority claims pursuant to 11 U.S.C. § 507(a)(8) of the Code,

as the same are allowed, approved and ordered to be paid by the Court, will be paid as stated

below.

The Unsecured Priority Claims debt to this date is $24,014.83 composed of $23,165.68

for the IRS and $849.15 for the Puerto Rico Dept. of Labor. The claims are described as follows:

- IRS (Claim Numbered 4) - Total amount claimed $33,896.47; Amount entitled to

  Priority Under 11 USC 507 $23,165.68; Unsecured Amount $10,730.79.

- PR Dept. of Labor (Claim Numbered 10) - Total amount claimed $1,511.69; Amount

  entitled to Priority Under 11 USC 507 $849.15; Unsecured Amount $662.54

All allowed unsecured priority claims, pursuant to 11 U.S.C. § 507(a)(8) of the Code, as

the same are allowed, approved and ordered to be paid by the Court, shall be paid by the Chapter 12 Trustee plus the 3.25% interest rate (prime rate)  commencing on the effective date and after the date of confirmation of the plan.

## FUNDING OF THE PLAN

The funds will be obtained from the Debtors' dairy farm operation on the basis of consecutive installments remitted weekly and directly from Vaqueria Tres Monjitas Inc. See Schedule Payments under the Plan of Reorganization. The Debtors also contemplate selling the whole business or part of it, and/or obtaining a loan for refinancing the long-term debts and using the milk quota and the real property as collateral.

Projections will be provided within 14 days from filing of the Plan

## ARTICLE VI PENDING LITIGATION

NONE.

## ARTICLE VII
## MEANS OF EXECUTION OF THE PLAN AND FEASIBILITY

The Debtors shall have sufficient funds to make all payments then due under this Plan. The funds will be obtained from Debtors' dairy farm operation. On the Consummation Date of the plan, the operation of the named business, all estate assets and allowed claims and valid liens, as set forth in the plan, shall be and become the general responsibility of the reorganized Debtors, which shall thereafter have the responsibility for the management, control and administration thereof. Management of Debtors' affairs, collection of moneys and distribution to creditors, will be under the control and supervision of the reorganized debtor, which will assume the same role the debtor in possession have assume through this reorganization process.

# ARTICLE VIII
## DISCHARGE OF CLAIMS

Once the Debtors have complete all payments in accordance to this Plan, and in the case of a Debtor(s) who is/are required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, other than payments to holders of allowed claims provided for under 11 USC 1222 (b)(5) or 11 USC 1222 (b)(9) unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the Debtor(s) a discharge of all debts provided for by the plan allowed under 11 USC 503 or disallowed under 11 USC 502 of this title, except any debt: provided for under 11 USC 1222 (b)(5) or 11 USC 1222 (b)(9), such as Scotiabank de Puerto Rico Debt, or of the kind specified in 11 USC 523 (a). The Discharge shall be granted once the Debtors have complied with the requirements for a Chapter 12 Discharge as set forth in 11 USC 1228.

# ARTICLE IX
## OBJECTIONS TO CLAIMS

The Debtors, the trustee, both at their option, and upon order of the Bankruptcy Court, if requested, may file an objection to any claim as to its validity or amount before the closing of the case. If an objection is made, payment to such claimants will be made only after the entry of a final order by the Court allowing such claim and in accordance with the provisions of the Plan governing such class to which such claims belongs.

The claim of any general unsecured creditor who fails to file a proof of claim or that files its claim after the fixed claims bar date be disallowed by confirmation hearing.

## ARTICLE X EXECUTORY CONTRACTS

Except as stated herein, Debtor assume all unexpired leases and executory contracts to which they a party and which have not been expressly rejected pursuant to 11 U.S.C. Section 365(a). Specifically, Debtor have assumed throughout the bankruptcy proceedings the following contracts:

Vaquería Tres Monjitas Inc - Milk Production Contract.

PREPA (Puerto Rico Electric Power Authority)

AAA (Autoridad de Acueductos y Alcantarillados)

Leases for grazing land as included in Schedule G

Insurance Policy Contracts if any

## ARTICLE X1
## PROVISIONS FOR THE MODIFICATION OF THE PLAN

The Debtors may propose amendments or modifications of this Plan at any time prior to its confirmation pursuant to 11 U.S.C. 1223. After confirmation of the Plan, the Reorganized Debtors may, with the approval of the Court and as long as it does not adversely affect the interest of the creditors, remedy any defect or omission, in such manner as may be necessary to carry out the purposes and effects of the same.

## ARTICLE XII CLOSING OF THE CASE

At such time as the case has been fully consummated, this case shall be closed. In order for the case to be close, the trustee shall file a final report and account showing that the case has been fully administered and the Plan has been fully consummated. The Court may conduct a hearing upon application thereof and after notice to all creditors and parties in interest.  Thereafter an order

approving the trustee's report and closing of the case shall be entered.

## ARTICLE XIII
## COMPLIANCE WITH LAWS AND GOOD FAITH

Debtors believe that the plan complies with all provisions of chapter 12 and any other applicable provision of the Bankruptcy Code, that the plan has been proposed in good faith and not by any means forbidden by law, and that all fees, charges or amounts required to be paid before confirmation have been paid.

## ARTICLE XIV

## CHAPTER 7 COMPARISON

Based upon the values of the Debtors' assets and the amount of secured and unsecured claims as set forth in Debtors' chapter 12 statement, the Debtors believe that the value, as of the effective date of the plan, of property to be distributed under this Plan are higher that what the creditors will receive if the Debtors were to be liquidated under Chapter 7 of the Bankruptcy Code. See, Liquidation Analysis enclosed as **EXHIBIT 1.**

## ARTICLE XV

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over this case as is conferred upon it by law, rule or statute, or by this Plan, to enable the debtors to consummate any and all proceedings which they may bring before or after the entry of the order of confirmation, in order to carry out the provisions of this Plan, specifically meaning until payment of all creditors as listed in the Treatment of Classes, Article IV, supra.

**EFFECTIVE DATE OF THE PLAN**

The "Effective Date of the Plan" will be thirty (30) days after the order of confirmation of the plan, becomes a final order and shall be the date on which there shall be made all cash payments required by the Plan.

**RESPECTFULLY SUMITTED,**

In Mayagüez, Puerto Rico, this May 14, 2020

*/s/ Juan José Peraza Mora*

*/s/Gloria E. Batista Molina*

ATTORNEY FOR DEBTORS
*/s/ Homel A. Mercado Justiniano*
USDC- PR -229705
Calle Ramírez Silva # 8 Ensanche Martínez
Mayagüez, PR 00680
Tel: (787) 831-3577
Fax: (787) 805-7350
Email: hmjlaw2@gmail.com
hmjlaw@yahoo.com

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUAN JOSÉ PERAZA MORA<br>GLORIA E. BATISTA MOLINA<br>d/b/a Vaquería Peraza<br>XXX - XX - 9523<br>XXX - XX - 1026<br>Debtors | CASE NO. 19-01896-ESL12<br><br>CHAPTER 12 |

**Amended Chapter 12 Plan Dated May 14, 2020**

PAYMENT PROPOSAL TO:

**CLASS 3 – Triangle Cayman Asset Company LLC**

Triangle Cayman Asset Company, LLC. ("TCA") is owed $3,408,971.11 (See Claim No. 7). This debt corresponds to a commercial loan secured with a first rank lien over Debtors' bi-weekly milk quota in the amount of 65,944 liters and a second rank lien over 288 liters (this second rank lien is over the same 65,944 liters that TCA already had first rank lien) as recognized by the ORIL (Oficina de Reglamentacion de la Industria Lechera) and with Debtors' real properties dedicated to the Dairy Farm operations.

These Claims by TCA will be treated pursuant to the Stipulation filed by the Debtors and Secured Creditor TCA on April 23, 2020 (at Docket No.148)  which includes the "EXHIBIT A" included in the *Motion Submitted Exhibit A to Settlement Agreement* filed on May 5, 2020 (at Docket No. 149).

**The following is also part of TCA's Treatment under the present Plan**: *On March 6, 2019, the PR District Court for the District of Puerto Rico entered Judgment in case captioned*

*17-01216-CCC in favor of Triangle and against the Debtors, in the total amount of $3,184,546.95 including principal, interests, late fees and legal expenses among others (the "Judgment"). The Debtors and Triangle reached agreement (the "Settlement Agreement") which provides for a discounted payment of the amounts due under the Judgment. If complied, the Settlement Agreement would result in the satisfaction of the Judgment. See Settlement Agreement filed at Docket No. 148-1. The Judgment is hereby ratified and incorporated by reference as if fully set forth herein.*

*Further, notwithstanding other covenants contained in this plan, the Debtors herein consent that the automatic stay shall terminate immediately, as to the Debtors and as to Debtors' estate on the earlier of: (i) the entry of an Order approving the Settlement Agreement; (ii) the confirmation of the instant Chapter 12 Plan of Reorganization; or (iii) the occurrence of an Event of Default, thereby allowing the Judgment to become final and unappealable.*

Regarding previous payments made by the Chapter 12 trustee on April and May 2019 in the total amount of $12,992.00. These disbursements were made as adequate protection payment for the use of TCA's Cash Collateral and said payments do not affect the proposed payments, value or terms, of the Stipulation filed at Docket N. 148 and Exhibit at Docket No. 149.

## CLASS 4 – Jorge Orlando Amador Delgado and his wife Diana Cajiga Ríos, and the Conjugal Partnership (Sociedad de Bienes Gananciales) composed by both of them

These creditors filed two claims, numbered 8 in the amount of $50,000.00 and numbered 9, in the amount of $160,000.00. Claim Numbered 8 is an unsecured claim and will be treated as part of the General Unsecured Creditors Class of this Chapter 12 Plan. Claim Numbered 9 was filed as secured in the amount of $96,000.00 and unsecured in the amount of $64,000.00. Claim

Numbered 9 is secured with a first rank lien over 8,000 liters of milk quota. These 8,000 liters of Milk Quota do not have a second rank lien over them. The Milk Quota securing claim 9 is valued at $12.00 per liter and it amounts to $96,000.00. Therefore, the amount of $96,000.00 belonging to Claim Numbered 9 will be paid pursuant to this class and the remaining $64,000.00 will be paid pursuant to the General Unsecured Creditors Class of this Chapter 12 Plan.

**Treatment**

**Debt Balance Restructuring Upon Confirmation** – On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and of the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full.

This creditor will be paid in a total term of 100 months. The first 60 months will be paid through the Chapter 12 Trustee. For these 60 months these creditors will receive $900 monthly and an interest rate of 4.75%. Once the Chapter 12 Plan is completed (60 months have elapses) the payment to the creditors of this class will be increased to $1,648.17 and this payment will be made for 40 months. See Amortization Schedule as **EXHIBIT 2.**

**COLLATERALS:** If at any moment, the Debtors obtain funds to pay in a lump sum the amounts provided under this Plan, there will be no penalties for such pre-payment. Regarding the security agreements over personal and real property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan is made. The Debtors acknowledge that if at any moment during the terms of this Plan as mentioned above, any document such as but not limited to: Mortgage Notes or Mortgage Deed, Uniform Commercial Code "UCC" Financing Statement,

Lien in the Milk Industry Regulation Office "ORIL", or at any other related document has to be modified, amended, executed and/or supplemented, the Debtors will satisfy the cost of the document

## CLASS 5 – COOPERATIVA DE AHORRO Y CREDITO DE HATILLO ("HATICOOP")

This creditor filed a Claim Numbered 3 for the total amount of $85,719.67 and the whole amount was claimed as secured. This creditor holds a second rank lien over 37,270 liters. These liters already have a $3.4 million first rank lien over them (belonging to Triangle Cayman Asset Company, LLC). Since the value of the liters that is $12.00 per liter is not sufficient to pay the first rank lien there is no equity left to pay HATICOOP. Therefore, HATICOOP's claim is completely unsecured and the whole amount of $85,719.67 will be paid pursuant to the General Unsecured Creditors Class of this Chapter 12 Plan.

Since this creditor has no equity and will be paid in the General Unsecured Creditors class the following applies: If the Debtors sell their business or obtain a loan, then the Debtors will seek and order from the Honorable Court to cancel the second rank lien over the liters of milk quota over which this creditor holds a second rank lien. This creditor will be guaranteed the amount it is entitled pursuant to the General Unsecured Creditor's Class of this Plan.

## CLASS 6 – GENERAL UNSECURED CREDITORS

The General Unsecured Creditors Class consists of the following: creditors have filed general unsecured claims and claims that have been filed as secured but due to the value of collateral are not fully secured and claims that are partially priority and partially unsecured. The total amounts General Unsecured Creditors that will participate in this class are $2,804,644.26

These creditors will receive a total amount of principal of $132,800.00 plus interest at a 3.25% interest rate The General Unsecured Creditors will be paid the equivalent of the Liquidation Value up to $132,800.00 and they will be paid after the Chapter 12 Trustee has paid all Priority Creditors. The General Unsecured Creditors will 4.74% of the principal owed to them.

The General Unsecured Creditors that will receive distribution are the ones that filed claims as follows:

| Creditor | Claimed/Listed | Amount |
|---|---|---|
| Pan American Co. | Claim 2 | $15,264.66 |
| HATICOOP | Claim 3 - deficiency/ Class 6 | $85,719.67 |
| IRS | Claim 4 - filed as partially unsecured | $10,730.79 |
| Federacion de Asociaciones Pecuarias de PR Inc | Claim 5 | $257,070.82 |
| PR Department of Treasury | Claim 6 | $12,227.57 |
| TCA | Claim 7 - deficiency/ Class 1 | $2,308,971.11 |
| Jorge Orlando Amador Delgado and his wife Diana Cajiga Ríos, and the Conjugal Partnership (Sociedad de Bienes Gananciales) composed by both of them | Claim 8 - $50,000 Claim 9 - Filed as partially unsecured in $64,000 | $114,000.00 |
| PR Department of Labor | Claim 10 - filed as partially unsecured | $662.54 |
| **TOTAL** | | $2,804,644.26 |

## SUMMARY OF PAYMENTS UNDER THE PLAN

The following table summarizes all payments under the present Amended Plan dated May 14, 2020:

| CREDITOR | MONTHLY PAYMENT MONTHS 1 – 60 | TOTAL PAID DURING LIFE OF THE PLAN |
|---|---|---|
| TCA | $4,000 bi-weekly for 24 months and as stated in Stipulation at Docket No. 148 and Exkibit at Docket No. 149 | $1,100,00.00 directly by Debtor |
| Jorge O Amador Delgado/ Diana Cajiga Rios/ the Conjugal Partnership between them | $900 x 60 months = $54,000 | $54,000 |
| UNSECURED CREDITORS | These creditors will receive a total amount of principal of $132,800.00 plus the amount of 3.25% per year in interest. The General Unsecured Creditors will be paid the equivalent of the Liquidation Analysis up to $132,800 These creditors will receive a "Pro- Rata" distribution as per Liquidation Value and they will be paid after the Chapter 12 Trustee has paid all Priority Creditors. | $160,000 (estimated with interest) |
| PRIORITY CREDITORS | IRS - $23,165.68 PR Dept of Labor - $849.15 | $27,000 (estimated with interest) |
| ESTIMATED PROFESSIONAL FEES | Lissette Morales - $22,730.37 Homel Mercado - $15,000 | $37,731 |
| TOTAL PAYMENT WITHOUT TRUSTEES FEES | | $278,731 |
| ESTIMATED TRUSTEES FEES | | $27,800 |
| TOTAL AMOUNT NEEDED | | $306,531 |
| ACTUAL PAYMENT THAT WILL BE MADE THROUGH CHAPTER 12 TRUSTEE. (payments are computed to be paid in months, but the Debtors will make weekly payments because milk production is paid in bi-weekly payments) | $1,800 bi-weekly for 65 bi-weekly periods (2 and ½ years) = $117,000 $2,500 bi-weekly for 65 bi-weekly periods (2 and ½ years) = $162,500 $27,031.00 as lump sum within 60 months from sale of cows for meat (discarded cows) and/or incentives | $306,531 |

## SPECIAL PROVISIONS:

In order to facilitate the implementation of this Chapter 12 Plan, Debtor hereby agrees and authorizes that, from the net proceeds of the periodic milk liquidations between Debtor and the

processing plant to which Debtor delivers its milk production, the processing plant, Vaquería Tres

Monjitas Inc. ("VTM") deducts from said net proceeds the amount of

- $1,800.00 bi-weekly for 65 bi-weekly periods = $117,000.00, then it increases to the sum
  below

- $2,500 bi-weekly for 65 bi-weekly periods = $156,000.00

These payments will be delivered to JOSE CARRIÓN (Chapter 12 Trustee), provided that

the net proceeds of said liquidations reach said amount after making the deductions indicated

above and any other provided for by any applicable law or made in the regular course of business

of the processing plant, or as otherwise indicated herein.

These funds, together with any other funds provided by Debtor to the Chapter 12 Trustee,

if any, as per the terms of the confirmed Chapter 12 Plan, will be distributed by the Trustee in

accordance with the terms of the confirmed Chapter 12 plan.

The processing plant will also make the corresponding withholdings and the following

payments:

1. Bi-weekly payment of $4,000.00 in favor of Triangle Cayman Asset Company LLC. as
   per Class 3 of this Amended Chapter 12 Plan

The processing plant will make all the above withholdings from Debtor on a bi-weekly

basis, as is the standard operating procedure.

As part of this Chapter 12 Plan, Debtor requests from the processing plant that all said

monthly payments be processed by the processing plant within ten (10) working days after the end

of each and every consecutive calendar month, commencing on the calendar month following the

Effective Date of the Chapter 12 Plan.

It is understood that all amounts agreed to be deducted from Debtor and disbursed by the processing plant as herein indicated are subject to the essential condition that the net proceeds of the milk liquidations be sufficient to cover the same after making such deductions provided by law and those expenses, costs and/or advances made and/or charged to Debtor by VTM, which will have priority over all other assignments of funds and/or requests for payments to third parties.

Once the Chapter 12 plan is confirmed by an order entered by the Bankruptcy Court that becomes final and unappealable, Debtor will give prompt written notice to the processing plant of the exact Effective Date as well as of any further change that may affect this procedure, including, but not limited to, (a) amendments to the Chapter 12 plan approved by the Court (b) the dismissal of the case (c) the conversion of this case to one under any other Chapter of the Bankruptcy Code and/or (d) the termination of Debtor's obligation to make payments to the Chapter 12 Trustee, to the Bank, or to any other party as provided for in the Chapter 12 Plan, or as directed by the Court.

Any assignments of funds to third parties to be deducted from Debtors' milk liquidations and paid through the processing plant, whether executed prior to the filing of the petition or afterwards, whether made under the provisions of the Civil Code of Puerto Rico or as mere requests for payments, are hereby cancelled and left without effect, unless and except as otherwise indicated below:

1. none

This Special Provisions Section constitutes an essential part of the Chapter 12 Plan. Should there be any discrepancy between the contents of this Special Provisions Section and the rest of

the Chapter 12 Plan, the contents of this Section will prevail