UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUAN JOSÉ PERAZA MORA<br>GLORIA E. BATISTA MOLINA<br>d/b/a Vaquería Peraza<br>XXX - XX - 9523<br>XXX - XX - 1026<br>Debtors | CASE NO. 19-01896-ESL12<br><br>CHAPTER 12 |

**Motion Submitting Stipulation for the Treatment of Claim for Secured Creditor, Triangle Cayman Asset Company**

**TO THE HONORABLE COURT:**

**Come Now,** the Debtors Juan J Peraza Mora and Gloria E Batista Molina, trough the undersigned counsel of record and very respectfully STATE and PRAY:

1. The Debtors filed the present Chapter 12 Bankruptcy Case on April 5, 2019 under case no. 19-01896-ESL12.

2. This Honorable Court entered an Order allowing the Debtors and Triangle Cayman Asset Company up to May 7, 2020 to submit a Settlement Agreement. See Order at Docket No. 146.

3. The parties submit the Settlement Agreement for the treatment of secured creditor, Triangle Cayman Asset Company, attached to this motion as **EXHIBIT 1**.

WHEREFORE it is respectfully requested that this Honorable Court approves the Stipulation submitted at Exhibit 1.

RESPECTFULLY SUBMITTED,

In Mayaguez, Puerto Rico this April 23, 2020

**Within twenty one (21) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerks office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.**

### CERTIFICATE OF SERVICE

Notice of this MOTION has been electronically provided by the CM/ECF system to: The **US Trustee** for the District of Puerto Rico, The Chapter 12 Trustee JOSE CARRION and to all attorneys and Creditors that have filed a notice of appearance. The non-CM/ECF participants will be notified by first class mail as per the Master Address List included herein.

Homel A. Mercado Justiniano, Esq.
*Attorney for Debtors*
Calle Ramirez Silva #8
Ensanche Martínez,
Mayaguez, PR 00680
Tel: (787) 831-2577/ 805-2945
Fax: (787)805-7350

*S/Homel A. Mercado-Justiniano*
USDC - PR 229705
hmjlaw2@gmail.com
hmjlaw@yahoo.com

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** the ("Settlement Agreement") is made this 23rd day of April, 2020 by and among (i) Juan José Peraza Mora, his wife Gloria Batista Molina, and the conjugal partnership constituted by them (hereinafter, the "Debtors"); and (iii) Triangle Cayman Asset Company ("Triangle" or "Creditor", collectively with the Debtors, the "Parties").

**WHEREAS**, On March 6, 2019, the PR District Court for the District of Puerto Rico entered Judgment in case captioned 17-01216-CCC in favor of Triangle and against the Debtors, in the total amount of $3,184,546.95 including principal, interests, late fees and legal expenses among others (as the same may increase pursuant to interest accrual considered in the same, the "Judgment"), which is hereby ratified. *See* Exhibit A.

WHEREAS, the Judgment is (i) hereby incorporated by reference as if fully set forth herein; (ii) ratified in all of its terms; and (iii) is enforceable upon the entry of an order approving this Settlement Agreement.

**WHEREAS**, On April 5, 2019, (the "Petition Date"), the Debtors filed their third voluntary petition[1] for relief under the provisions of Chapter 12 of the Bankruptcy Code (the "Code") in the U.S. Bankruptcy Court, District of Puerto Rico (the "Court" or the "Bankruptcy Court") captioned as In re: Juan José Peraza Mora and Gloria Batista Molina, Bankr. Case No. 19-01896(ESL) (the "Bankruptcy Case"). *See* Docket. No. 1.

**WHEREAS**, on June 13, 2019, Triangle filed Proof of Claim 7 in the total amount of $3,408,971.11, including the secured portion of $2,388,784.00 and an unsecured portion in the amount of $1,020,187.00 ("Triangle's Claim"). *See* Proof of Claim No. 7.

---

[1] On February 20, 2013, the Debtors filed their first Chapter 12 bankruptcy petition. *See* Case No. 13-01249(ESL). On February 26, 2014, the Debtors filed their second petition for relief under the provisions of Chapter 12 of the Bankruptcy Code. *See* Case No. 14-01392(ESL).

1

**WHEREAS**, the Parties have agreed to the enter into this Settlement Agreement, which shall provide for the treatment of Triangle's Claim under the Chapter 12 of Reorganization to be proposed for confirmation under the Bankruptcy Case.

**WHEREAS**, the Parties have agreed to settle Triangle's Claim for an amount equal to $1,100,000.00 (the "Discounted Payoff Amount") which shall be payable by the Debtors to Triangle as hereinafter set forth.

**WHEREAS**, the Parties have further agreed that should the Debtors fail to comply with the terms and conditions set forth in this Settlement Agreement, Triangle shall foreclose on the Judgment at will;

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

I.       **The Loan and Collateral**

1.       On December 11, 2007, the Debtors executed a loan agreement ("Loan Agreement I") with Eurobank in the amount of $610,000.00. Loan Agreement I was authenticated under affidavit number 11,358 before Notary Public Ismael Perez Nieves. This loan is further evidenced by a promissory note in the amount of $610,000.00 issued by Debtors, payable to Eurobank, or to its order, authenticated by affidavit number 11,353 of Notary Public Ismael Perez Nieves, duly endorsed to Triangle ("Promissory Note I").

2.       On March 15, 2010, the Debtors executed another loan agreement with Eurobank (hereinafter, "Loan Agreement II", and together with Loan Agreement I, the "Loan Agreements"), in the amount of $2,283,000.00. Loan Agreement II is further evidenced by a promissory note in the amount of $2,283,000.00 issued by Debtors, payable to Eurobank, or to its order, authenticated by affidavit number 28,639 of Notary Public

2

Ismael Perez Nieves, duly endorsed to Triangle (hereinafter, "Promissory Note II" and together with Promissory Note I, the "Promissory Notes").

3.      To guarantee and secure their obligations under the Loan Agreements and the Promissory Notes, the Debtors executed certain loan and collateral documents including the following: (i) mortgage notes; (ii) mortgage deeds; (iii) security agreements (iv) pledge agreements; and, (v) assignment of receivables, among others (hereinafter collectively, the "Loan Documents").

4.      Pursuant to the provisions of the Loan Documents, Triangle maintains a first priority security interest over certain milk quota and real estate properties, which are detailed as follows:

    a)  Milk Quota Collateral

        i.  66,232 liters of the milk quota registered under ORIL license No. 3052 (the "Milk Quota")[2];

    b)  Mortgages over the Following Real Estate Properties

        i.  Property No. 4,782, recorded at page 13 of volume 109 of Hatillo, Registry of the Property of Puerto Rico, Section II of Arecibo, ("Property No. 4,782") which is described in the original Spanish language as follows:

> **RUSTICA**: Radicada en el Barrio Corcobadas de Hatillo, Puerto Rico, con una cabida superficial de ciento cincuenta y siete mil quinientos ochenta y siete punto seis mil seiscientos setenta y tres (157,587.6673) metros cuadrados. En lindes al **NORTE,** con remanente de la finca; por el **SUR,** con Federico Ruiz y Jerónimo Valentín; por el ESTE, con solares segregados uno (1), dos (2), tres (3) y cuatro (4); y

---

[2] According to the Milk Quota Certification issued by ORIL, Debtors are duly authorized in the milk production industry under license No. 3052, to produce 75,944 milk quarts every 14 days. The ORIL Certification also reveals that 66,232 quarts are encumbered in favor of Triangle.

3

por el **OESTE**, con Alberto Pérez, Tomás García Casanova y Francisco Ruiz. Contiene una casa de concreto.

    ii.    Property No. 4,229, recorded at page 100 of volume 86 of Hatillo, Registry of the Property of Puerto Rico, Section II of Arecibo, ("Property No. 4,229") which is described in the original Spanish language as follows:

> **RUSTICA**: Radicada en el Barrio Carrizales de Hatillo, Puerto Rico, compuesta de catorce (14.00) cuerdas, equivalentes a cinco hectáreas, ciento cincuenta 150 áreas y veinte centiáreas. En lindes al **NORTE**, con Carmelo Antonio García González; por el **SUR**, con Luis Jaime García González; por el **ESTE**, con Alejandro Plasencia; y por el **OESTE**, con un camino vecinal y al otro lado con Salomón Hawayek.

5.    Property No. 4,782 and Property No. 4,229 described above, are hereinafter collectively referred to as the "Real Estate Properties", and together with the Milk Quota, the "Collateral".

## II.    The Settlement Agreement

6.    After lengthy and considerable negotiations, the Debtors have agreed to the following terms and conditions, which shall serve as treatment of Triangle's Claim in the Chapter 12 Plan of Reorganization.

7.    Debtors hereby: (i) consent to the Settlement Agreement contemplated herein and acknowledge, reaffirm, and ratify all security interests granted and liens constituted pursuant to the Loan Documents as security for the payment and performance of all of Debtors' obligations under the Loan Documents and their priority rank; (ii) acknowledge and agree that the guarantees (and all security therefore), contained in the Loan Documents are, and shall continue to remain, in full force and effect after giving

effect to this Settlement Agreement; (iii) ratify the Loan Agreements, the Loan Documents, and the Collateral; and (iv) ratify the Judgment.

      8.    The Debtors recognize the validity and enforceability of Triangle's first rank lien over the Milk Quota. The Debtors further recognize the validity and enforceability of Triangle's security interests and liens over the Real Estate Properties as further described below:

    i.    Property No. 4,782 is encumbered by a mortgage in the principal amount of $716,000 which secures a Mortgage Note in the same amount, payable to Eurobank, or to its order, bearing interest at 8.25%, authenticated under affidavit No. 19,025 of Notary Public Juan E. Nieves Mora ("Mortgage Note I").

      The referenced mortgage lien was constituted pursuant to the terms of Deed of Mortgage Number 301 (hereinafter, the "Deed of Mortgage I") executed on November 8, 1996 before Notary Public Juan E. Nieves Mora. According to Deed of Mortgage I, Property No. 4,782 is liable for $580,000. Deed of Mortgage I is recorded over Property 4,782 at page 224 of volume 163 of Hatillo, 19th inscription.

    ii.    Property No. 4,782 is encumbered by a mortgage in the principal amount of $194,000 which secures a Mortgage Note in the same amount, payable to Eurobank, or to its order, bearing interest at the Prime Rate per annum, authenticated under affidavit No. 20,174 of Notary Public Jose L. Landrón Ramery ("Mortgage Note II").

      The referenced mortgage lien was constituted pursuant to the terms of Deed of Mortgage Number 51 (hereinafter, the "Deed of Mortgage II") executed on May 6, 1996 before Notary Public Jose L. Landrón Ramery. Deed of Mortgage II is recorded over Property 4,782 at page 115 of volume 315 of Hatillo, 20th inscription.

    iii.    Property No. 4,782 is encumbered by a mortgage in the principal amount of $300,000 which secures a Mortgage Note in the same amount, payable to Eurobank, or to its order, bearing interest at the Prime Rate per annum, authenticated under affidavit No. 4,244 of Notary Public Ismael Pérez Nieves ("Mortgage Note III").

      The referenced mortgage lien was constituted pursuant to the terms of Deed of Mortgage Number 78 (hereinafter, the "Deed of

Mortgage III") executed on August 28, 2002 before Notary Public
Ismael Pérez Nieves. According to Deed of Mortgage III, Property
No. 4,782 is liable for $200,000. Deed of Mortgage III is recorded
over Property 4,782 at page 115 of volume 315 of Hatillo, 21st
inscription.

iv.   Property No. 4,782 is encumbered by a mortgage in the principal
amount of $169,000 which secures a Mortgage Note in the same
amount, payable to Eurobank, or to its order, bearing interest at the
Prime Rate per annum, authenticated under affidavit No. 6,823 of
Notary Public Ismael Pérez Nieves ("Mortgage Note IV").

The referenced mortgage lien was constituted pursuant to the terms
of Deed of Mortgage Number 105 (hereinafter, the "Deed of
Mortgage IV") executed on September 23, 2004 before Notary
Public Ismael Pérez Nieves. According to Deed of Mortgage IV,
Property No. 4,782 is liable for $119,000. Deed of Mortgage IV is
recorded over Property 4,782, Daily Book 296, entry 757[3].

v.   Property No. 4,782 is encumbered by a mortgage in the principal
amount of $149,000 which secures a Mortgage Note in the same
amount, payable to Eurobank, or to its order, bearing interest at 12%
per annum, authenticated under affidavit No. 28,640 of Notary
Public Nelson Gonzalez Rosario ("Mortgage Note V").

The referenced mortgage lien was constituted pursuant to the terms
of Deed of Mortgage Number 11 (hereinafter, the "Deed of
Mortgage V") executed on March 15, 2010 before Notary Public
Nelson Gonzalez Rosario. Deed of Mortgage V is recorded over
Property 4,782, Daily Book 315, entry 401[4].

vi.   Property No. 4,229 is encumbered by the mortgage constituted
pursuant to Deed of Mortgage I. According to Deed of Mortgage I,
Property No. 4,229 is liable for $136,000. Deed of Mortgage I is
recorded over Property 4,229 at page 263 of volume 175 of Hatillo,
17th inscription.

vii.   Property No. 4,229 is encumbered by a mortgage in the principal
amount of $66,000 which secures a Mortgage Note in the same
amount, payable to Eurobank, or to its order, bearing interest at the
Prime Rate, authenticated under affidavit No. 20,175 of Notary
Public José L. Landrón Ramery ("Mortgage Note VI").

---

[3] Recorded pursuant to Act No. 216-2010, 2010 P.R. Law 216.
[4] Recorded pursuant to Act No. 216-2010, 2010 P.R. Law 216.

The referenced mortgage lien was constituted pursuant to the terms of Deed of Mortgage Number 52 (hereinafter, the "Deed of Mortgage VI") executed on May 6, 1999 before Notary Public José L. Landrón Ramery. Deed of Mortgage VI is recorded over Property 4,229 at page 264 of volume 175 of Hatillo, 18th inscription.

viii. Property No. 4,229 is encumbered by the mortgage constituted pursuant to Deed of Mortgage III. According to Deed of Mortgage III, Property No. 4,229 is liable for $100,000. Deed of Mortgage III is recorded over Property 4,229 at page 26 of volume 391 of Hatillo, 19th inscription.

ix. Property No. 4,229 is encumbered by the mortgage constituted pursuant to Deed of Mortgage IV. According to Deed of Mortgage IV, Property No. 4,229 is liable for $50,000. Deed of Mortgage IV is recorded over Property 4,229, Daily Book 296, entry 757[5].

9. The Debtors further recognize and stipulate the validity and enforceability of Triangle's Claim, which is described above and filed in the Bankruptcy Case as Proof of Claim No. 7. *See* Proof of Claim No. 7.

10. Pursuant to this Settlement Agreement, the Parties have agreed to settle Triangle's Claim by Debtors' payment to Triangle of the Discounted Payoff Amount, which payment shall be made based on the following terms and conditions agreed between the Parties:

a) Milk Quota – For a period of twenty four (24) months from the Effective Date of the Plan (the "Expiration Date"), the Debtors will market and sell, at their cost, the 66,232 quarts of the Milk Quota at a price of no less than $11 per quart or any other amount that may be agreed to in writing by the Parties. The sale of the Milk Quota shall be made free and clear of liens under Section 363 of the Bankruptcy Code. The Debtors further agree that any and all of the proceeds from the sale

---

[5] Recorded pursuant to Act No. 216-2010, 2010 P.R. Law 216.

7

of the Milk Quota will be paid by the Debtors to Triangle (the "<u>Milk</u>
<u>Quota Proceeds</u>"). If the Debtors fail to sell the Milk Quota by the
Expiration Date, the Debtors herein agree that Triangle shall be entitled
to foreclose on the Judgment and its Collateral at will. Debtors represent
that they are the rightful owners of the Milk Quota (as fully described
herein) and, furthermore, represent that there are no impediments for
Triangle to proceed with the foreclosure of the Judgment and the
Collateral.

b)  <u>Real Estate Properties</u> – The Debtors will market and sell, at their cost,
the Real Estate Properties prior to the Expiration Date.  The sale of the
Real Estate Properties shall be free and clear of liens under Section 363
of the Bankruptcy Code and the sales price for each of the Real Estate
Properties shall be reasonably pre-approved by Triangle. The Debtors
further agree that any and all of the proceeds from the sale of the Real
Estate Properties will be paid by the Debtors to Triangle (the "<u>Real</u>
<u>Estate Proceeds</u>"). If the Debtors fail to sell the Real Estate Properties
by the Expiration Date, the Debtors herein agree that Triangle shall be
entitled to foreclose on the Judgment and its Collateral at will. Debtors
represent that they are the rightful owners of the Real Estate Properties
(as fully described herein) and, furthermore, represent that there are no
impediments for Triangle to proceed with the foreclosure of the
Judgment and the Collateral.

c) <u>Payments</u> – In addition to marketing for sale the Milk Quota and the

Real Estate Properties (as well as delivering to Triangle the

corresponding Milk Quota Proceeds and Real Estate Proceeds), the

Debtors further agree that they will pay the DPO Amount to Triangle as

follows:

(i) Debtors will make bi-weekly payments in the amount of four

thousand ($4,000.00) (the "<u>Bi-weekly Payments</u>") which shall

be made directly by the milk processing plant to Triangle (the

"<u>Bi-weekly Payments</u>"). These payments shall commence on the

Effective Date of the Plan and shall continue up to the Expiration

Date.

(ii) The Parties further agree that at the 25th month from the

Effective Date of the Plan (that is, 30 days from the Expiration

Date), the Debtors shall pay Triangle the amount of $892,000.00

(the "<u>Balloon Payment</u>"), which proceeds will come from the

sale of any of Debtors' assets, including the Milk Quota, the

Real Estate Properties, the herd and dairy farm equipment,

among others.

The Parties hereto specifically agree and acknowledge that the

delivery by the Debtors to Triangle of any Milk Quota Proceeds

or Real Estate Proceeds shall not excuse the Debtors from

making the Bi-weekly Payments.

Notwithstanding, Triangle concedes that if the Debtors comply with all of the Bi-weekly Payments during the first twelve (12) months form the Effective Date of the Plan, and provided that by such date, the Debtors were able to sell at least fifty percent (50%) of the Milk Quota (and delivered the corresponding Milk Quota Proceeds to Triangle), then the face amount of the Bi-weekly Payments will be reduced to two-thousand dollars ($2,000.00) up to the Expiration Date (with no modification to the Balloon Payment).

The Parties further agree that Debtors shall be entitled to pay off the DPO Amount in full to Triangle, prior to the Expiration Date, provided that Debtors are able to sell the Milk Quota and the Real Estate Properties, or any other assets they may have, and deliver the proceeds thereof to Triangle before such Expiration Date.

10.     Based on the above considerations, and during the term of this Settlement Agreement, Triangle agrees not to seek foreclosure of the Judgment or its Collateral until such time as the Debtors fail to make any of the Bi-Weekly Payments, sell the Milk Quota or Real Estate Properties as specified and within the time specified in ¶ 9(c), *supra*, or upon the occurrence of an Event of Default (as more particularly defined below).

11.     Pursuant to this Settlement Agreement, the Debtors represent and submit that there are no occupants in the Real Estate Properties and no third party has any claim to the Real Estate Properties. Moreover, Debtors herein agree that if a controversy should

10

arise related to the use, occupancy or ownership of the Real Estate Properties, the Debtors will defend, hold harmless and indemnify Triangle from any claim that is filed against Triangle and/or any of its affiliates or related entities, by any person or entity claiming to have a right to possession, title and/or enjoyment of the Real Estate Properties or any portion thereof.

12.     The Debtors agree to fully cooperate with Triangle at all times and to deliver to Triangle any information and/or documentation it has available within its records, if any, related to the Real Estate Properties, which may serve Triangle, including but not limited to title abstracts, property tax certifications, appraisals and environmental reports. The Parties agree that after the expiration of the twenty-four (24) month period for Debtors to sell the Milk Quota or the Real Estate Properties or upon the occurrence of an Event of Default, Triangle, or its assignee, will be allowed, but not required, to foreclose on the Milk Quota or the Real Estate Properties without providing additional notice to the Debtors.

13.     Debtors and Triangle agree that nothing herein shall obligate or bind Triangle, or its assignee, to pursue the execution of Judgment and/or take title of the Milk Quota and/or the Real Estate Properties. Moreover, neither a failure nor a delay on the part of the Creditor to exercise any right, power, or privilege hereunder or under any of the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder or under any of the Loan Documents preclude any other or further exercise thereof or the exercise of any other right, power, or privilege. No notice to or demand upon any Debtors shall be deemed to be a waiver of the obligations of any of the Debtors or of the right of the Creditor to take further action without notice or demand.

14. Any of the following events (each, an "<u>Event of Default</u>") (and whether such occurrence is voluntary of involuntary or comes about or is affected by operation of law or otherwise) is an Event of Default:

    a) If any representation, warranty or other written statement made by Debtors or by an authorized representative of Debtors to Triangle with regards to the initiation, negotiation, discussion, and/or obtention of this Settlement Agreement proves to have been false or misleading in any material respect when made; or

    b) If Debtors shall breach any covenant or obligation contained in the Settlement Agreement or fail to comply with or fail to perform any of the terms, conditions or covenants or its obligations set forth in the Settlement Agreement; including but not limited to the failure to provide the Bi-weekly Payments to Triangle or failure to sell the Milk Quota or Real Estate Properties within the time prescribed; or

    c) If Debtors shall challenge in any form, way, manner, or action the validity or enforceability of any of the Loan Documents, the enforceability of the obligations thereunder, or the perfection or priority of any lien granted to Triangle, or if any of the Loan Documents ceases to be in full force or effect; or

    d) The confirmation or amendment of any plan of reorganization, inconsistent with the terms and conditions of this Settlement Agreement; or the entry of an order providing relief from the automatic stay, imposed pursuant to Section 362 of the Bankruptcy Code, allowing any creditor, other than Triangle, to realize upon, or to exercise any right or remedy with respect to any asset for which Debtors have granted Triangle a security interest and/or lien; or

    e) Any act from the Debtors that is inconsistent with the terms and conditions agreed pursuant to this Settlement Agreement, including but not limited to any of Debtors' acts to directly or indirectly obstructs, delays, objects or impedes, for whatever reason, the sale of the Milk Quota and/or the Real Estate Properties, or the corresponding delivery to Triangle of the Milk Quota Proceeds or the Real Estate Proceeds.

    f) Debtors' interference, in any way, with the Creditor's exercise of remedies hereunder, including but not limited to the foreclosure of the Judgment following a failure by the Debtors to comply with the sale of the Collateral pursuant to the terms and conditions agreed in this Settlement Agreement.

16. Upon the occurrence of any Event of Default, as provided above, all of the

Loan Documents, collateral and Debtors' obligations with Triangle shall revert to their original, pre-petition state, and their indebtedness shall become immediately due and payable without further notice by Triangle, and the Judgment shall become fully executable in all of its terms. The Debtors hereby waive any right to seek reconsideration, appeal or to move to set aside the Judgment.

17.     Further, it is hereby understood and agreed by each of the Parties hereto, that this agreement is not intended to constitute an extinctive novation (*novación extintiva*) of the obligations and undertakings of the Parties under any of the Loan Documents regarding such loans, as amended to date. No waiver, modification or amendments of any of the provisions of this Settlement Agreement shall be effective unless set forth in writing and signed by Triangle and Debtors and approved by this Bankruptcy Court.

18.     This Settlement Agreement is subject to the final approval of the Bankruptcy Court in the Bankruptcy Case. Furthermore, the terms of the Settlement Agreement are to be incorporated to the Plan through the filing of an amended Chapter 12 Plan of Reorganization. Moreover, in the event that this Settlement Agreement is not approved and/or upon an Event of Default, Triangle shall have the right to seek any relief it deems necessary and appropriate before this Court. Triangle herein is not waiving any rights it may have in the event that this Settlement Agreement is not approved.

19.     The Debtors herein agree that the automatic stay shall terminate immediately as to the Debtors and as to Debtors' estate on the earlier of: (i) the entry of an Order approving this Settlement Agreement; (ii) the confirmation of the Chapter 12 Plan of Reorganization; or (iii) the occurrence of an Event of Default, thereby allowing the Judgment to become final and unappealable.  Notwithstanding anything to the contrary

13

contained in this Settlement Agreement, the Debtors expressly agree that upon an Event of Default, Triangle shall be immediately allowed to foreclose on the Judgment.

20.     Effective upon the execution of this Settlement Agreement, each of the Debtors, on behalf of themselves and on behalf of, and intending to legally bind their respective successors, heirs and assigns (collectively the "Releasing Loan Debtors") irrevocably and unconditionally release and forever discharge the Creditor, Capital Crossing Puerto Rico, LLC, and all of their subsidiaries, parents and affiliates, and each of their respective employees, agents, representatives, consultants, attorneys, fiduciaries, servants, officers, directors, partners, servicers, predecessors, successors and assigns, and all persons acting by, though, under or in concert with any of the aforesaid persons or entities (collectively, the "Creditor Released Parties"), from any and all causes of action, judgments, executions, suits, debts, claims, demands, liabilities, obligations, damages and expenses of any and every character, known or unknown, direct and/or indirect, at law or in equity, of whatsoever kind or nature, whether heretofore or hereafter arising, for or because of any act, omission, negligence or breach of duty by any of the Creditor Released Parties prior to and including the date of execution hereof, and in any way directly or indirectly arising out of or in any way connected to the Loan, this Settlement Agreement and/or the Loan Documents, including, without limitation, claims relating to any settlement negotiations and any theory of lender liability or the like (collectively, the "Creditor Released Matters")

21.     In furtherance of the foregoing release, the Releasing Loan Debtors covenant and agree never to institute or cause to be instituted, or continue prosecution of, or assist, any suit or other action or proceeding of any kind or nature against any of the

Creditor Released Parties, by reason of, or in connection with, any of the Creditor Released Matters.

22.     As a material inducement for the Creditor to enter into this Settlement Agreement, in recognition of the risks associated with the Creditor's execution and performance of this Settlement Agreement, and in consideration of the recitals and mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the Debtors hereby agrees to, jointly and severally, defend, indemnify, and release from any and all liability each of the Creditor Released Parties from any claim, damage, judgment, penalty, fee, expense (including the attorney fees, costs and expenses incurred by the Creditor and/or any of the Creditor Released Parties in enforcing their respective rights under this Settlement Agreement) that arise, directly or indirectly, from any claim against the Creditor based on or related to: 11 U.S.C. §§ 544, 545, 546, 547, 548, 549, 550, 553(b), Puerto Rico Civil Code Article 1244 et seq., and/or the Loan, this Settlement Agreement, or any of the Loan Documents.

23.     Each of the Debtors hereby expressly, irrevocably, and unconditionally renounces and waives all rights that are waivable under Article 9 of the Puerto Rico Commercial Transactions Act and under the Puerto Rico Mortgage and Registry of the Property Act (collectively, the "UCC").  Without limiting the generality of the foregoing, each of the Debtors hereby: (i) expressly and unconditionally renounces any right to receive notice of any disposition by the Creditor of the Collateral, whether such disposition is by public or private sale under the UCC or otherwise; (ii) expressly, irrevocably, and unconditionally waives any rights relating to compulsory disposition of the Collateral; and

15

(iii) expressly, irrevocably, and unconditionally waives any right of redemption.  Each of

the Debtors also hereby acknowledges and agrees that any procedure selected by the

Creditor to dispose of any Collateral shall constitute a commercially reasonable manner for

the disposition of such Collateral.

24.      Each of the Debtors hereby agrees and covenants that none of the Debtors

shall: (a) fail to perform and/or breach any covenant, representation and/or warranty

contained in this Settlement Agreement and/or the Loan Documents; (b) sell, transfer or

convey the Milk Quota or any of the Real Estate Properties without the Creditor's written

consent; (c) lease or assign any right or property interests in the Milk Quota or in any of

the Real Estate Properties without the Creditor's written consent; (d) allow the creation or

perfection of any lien or encumbrances on the Milk Quota or any of the Real Estate

Properties without the Creditor's written consent; and (e) engage (or allow any entity or

person to engage) in any acts or conduct that may deteriorate or diminish the value of any

of the Milk Quota or any of the Real Estate Properties.

25.      This Settlement Agreement shall be binding upon and inure to the benefit

of and be enforceable by the Parties thereto, their respective successors and assigns.  No

other person or entity shall be entitled to claim any right or benefit hereunder, including,

without limitation, the status of a third-party beneficiary of this Settlement Agreement or

the Loan Documents.

26.      The Parties herein agree that each Party shall be liable for their own costs

and expenses associated in the preparation and execution of this Settlement Agreement.

27.      Nothing in this Settlement Agreement or in any of the Loan Documents,

expressed or implied, is intended to or shall constitute the Parties hereto as partners or

participants in a joint venture. Further, each of the Debtors hereby acknowledge and stipulate that the Creditor is not a: (i) director of any of the Debtors; (ii) officer of any of the Debtors; (iii) person in control of any of the Debtors; (iv) partnership in which any of the Debtors is a general partner; (v) general partner of any of the Debtors; or (vi) relative of a general partner, director, officer, or person in control of any of the Debtors.

28.     The appearing parties warrant that the terms and conditions set forth herein are reasonable under the circumstances and that they have acted in good faith in connection with the negotiations of this Settlement Agreement and in moving the Bankruptcy Court for an Order approving the same.

29.     The Parties further acknowledge that they have negotiated at length and in good faith to reach the arrangements set forth in this Settlement Agreement. The Parties acknowledge that they are represented by legal counsel of their choice, are fully aware of the terms contained in this Settlement Agreement and have voluntarily and without coercion or duress of any kind entered into this Settlement Agreement and the documents executed in connection with this Settlement Agreement.

30.     In the event that the terms and conditions contained in this Settlement Agreement are inconsistent with the terms contained in the Chapter 12 Plan, as confirmed by the Bankruptcy Court, the terms of this Settlement Agreement shall prevail.

31.     If a court of competent jurisdiction declares any provision of the Settlement Agreement null or invalid, the Parties agree that such holding will not affect the validity of the remaining provisions, and the Parties agree to comply with their respective obligations under such provisions not included in the judicial determination.

32.     The terms and conditions contained in this Settlement Agreement shall remain unaltered notwithstanding: (i) the ability to confirm a plan; (ii) the dismissal or conversion of the Bankruptcy Case; or (iii) the approval for post-confirmation modification of the plan in the Bankruptcy Case.

33.     Per this Settlement Agreement, the Parties respectfully request that the Court retain jurisdiction to enforce the terms and conditions of this Settlement Agreement.

**[SIGNATURE PAGE FOLLOWS]**

| THE PARTIES | THE PARTIES |
|---|---|
| **TRIANGLE CAYMAN ASSET COMPANY**<br><br>By    : _____<br><br>Name  : _____<br><br>Title    : _____ | _____<br>**JUAN JOSE PERAZA MORA**<br><br><br>_____<br>**GLORIA ESTHER BATISTA MOLINA** |
| **LEGAL REPRESENTATION** | **LEGAL REPRESENTATION** |
| **O'NEILL & BORGES LLC**<br>*Attorneys for Triangle Cayman Asset Company*<br>250 Avenida Muñoz Rivera, Suite 800<br>San Juan, PR 00918-1813<br>Tel.  787-764-8181<br>Fax. 787-753-8944<br><br>*S/Hermann D. Bauer Álvarez*<br>Hermann D. Bauer Álvarez, Esq.<br>USDC No. 215205<br>hermann.bauer@oneillborges.com<br><br>*S/Martha L. Acevedo Peñuela*<br>Martha L. Acevedo-Peñuela, Esq.<br>USDC No. 300501<br>martha.acevedo@oneillborges.com | Homel A. Mercado Justiniano, Esq.<br>*Counsel for Debtors*<br>Calle Ramirez Silva #8<br>Ensanche Martinez,<br>Mayaguez, P.R., 00680<br>Tel.  (787) 831-2577 / 805-2945<br>Fax. (787) 805-7350<br><br><br>By: /S */Homel A Mercado Justiniano*<br>Homel A. Mercado-Justiniano<br>USDC. No. 229705<br>hmjlaw2@gmail.com<br>hmjlaw@yahoo.com |

Label Matrix for local noticing
0104-3
Case 19-01896-ESL12
District of Puerto Rico
Old San Juan
Thu Apr 23 11:38:56 AST 2020

PAN AMERICAN GRAIN CO INC
PARQUE INDUSTRIAL AMELIA
9 CLAUDIA ST
GUAYNABO, PR 00968-8005

US Bankruptcy Court District of P.R.
Jose V Toledo Fed Bldg & US Courthouse
300 Recinto Sur Street, Room 109
San Juan, PR 00901-1964

ELA DEPT OF TREASURY
BANKRUPTCY DIV #424 B
PO BOX 9024140
SAN JUAN PR 00902-4140

IRS
PO BOX 7346
PHILADELPHIA PA 19101-7346

JOSE L ACEVEDO PEREZ
BOX 1147
MOCA PR 00676-1147

MIGUEL  ROMAN
SR #2 RR 493 KM 1.0 INT DERECHA
BARRIO CARRIZALES
HATILLO PR 00659

Puerto Rico Department of Labor
Collection Unit - 12th Floor
PO Box 195540
San Juan PR 00919-5540

DIANA CAJIGAS RIOS
HC 04 BOX 17351
CAMUY, PR 00627-7616

JORGE ORLANDO AMADOR DELGADO
HC 04 BOX 17351
CAMUY, PR 00627-7616

CRIM
PO BOX 195387
SAN JUAN, PR 00919-5387

Triangle Cayman Asset Company, LLC
250 Ave Munoz Rivera
Suite 800
San Juan, PR 00918-1813

CAPITAL CROSSING PR LLC
FBO TRIANGLE CAYMAN ASSET CO
PO BOX 70111
SAN JUAN PR 00936-8111

FEDERACION ASOC PECUARIAS DE PR INC
PO BOX 2635
MAYAGUEZ PR 00681-2635

IVAN CABAN SOTO, ESQ
PO BOX 2122
MOCA PR 00676-2122

LUCY ROMAN
SR #2 RR 493 KM 1.0 INT DERECHA
BARRIO CARRIZALES
HATILLO PR 00659

O'NEILL & BORGES LLC
250 MUNOZ RIVERA AVE STE 800
SAN JUAN PR 00918-1813

TRIANGLE CAYMAN ASSET CO
221 PONCE DE LEON STE 1204
SAN JUAN PR 00917-1806

GLORIA BATISTA MOLINA
HC 01 BOX 8076
HATILLO, PR 00659-7361

JOSE RAMON CARRION MORALES
PO BOX 9023884
SAN JUAN, PR 00902-3884

FEDERACION DE ASOCIACIONES PECUARIAS DE PR I
O'NEILL & GILMORE
252 PONCE DE LEON AVE
SUITE 1701
SAN JUAN, PR 00918-2019

VAQUERIA TRES MONJITAS INC
PO BOX 366757
SAN JUAN, PR 00936-6757

DEPARTMENT OF TREASURY
BANKRUPTCY SECTION 424 B
PO BOX 9024140
SAN JUAN, PR 00902-4140

HATICOOP
PO BOX 95
HATILLO, PR 00659-0095

JORGE ORLANDO AMADOR DELGADO
DIANA ESTHER CAJIGA RIOS
HC 04 BOX 17351
CAMUY PR 00627-7616

LUIS CRUZ VELEZ ESQ
PO BOX 427
HATILLO PR 00659-0427

PAN AMERICAN GRAIN CO INC
9 CALLE CLAUDIA ESQ BEATRIZ
PARQUE INDUST AMELIA
GUAYNABO PR 00968-8005

Triangle Cayman Asset Company, LLC
C/o Capital Crossing Puerto Rico, LLC
221 Ponce de Leon Ave. Suite 1204
San Juan, P.R. 00917-1806

HOMEL MERCADO JUSTINIANO
8 CALLE RAMIREZ SILVA
ENSANCHE  MARTINEZ
MAYAGUEZ, PR 00680

JUAN JOSE PERAZA MORA
HC 01 BOX 8076
HATILLO, PR 00659-7361

MONSITA LECAROZ ARRIBAS
OFFICE OF THE US TRUSTEE (UST)
OCHOA BUILDING
500 TANCA STREET  SUITE 301
SAN JUAN, PR 00901


          The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)19-1896                              (d)CRIM                                 (u)JUAN JOSE PERAZA MORA AND GLORIA BATISTA M
                                        PO BOX 195387
                                        SAN JUAN PR 00919-5387



(u)Lyssette A Morales                   End of Label Matrix
                                        Mailable recipients    30
                                        Bypassed recipients     4
                                        Total                  34